## No. 5 Fidelity Building & Savings Union v. Driver et al.

[No. 4,418.   Filed November 24, 1903.]

Fraud.—*Building and Loan Associations.*—*False Representations by
Officers as to Maturity of Stock.*—*Evidence.*—In an action to foreclose
a mortgage defendant filed an answer alleging that at the time
of the execution of the mortgage, and the assumption thereof by
him when he purchased the property, plaintiff's officers falsely
and fraudulently represented that the association was in a flourish-
ing condition and paying large dividends, and that the stock
would mature within a specified number of payments, when in
truth and in fact it was not in a flourishing condition, and had
never had great earning capacity, and was not earning any divi-
dends, but was organized and operated to pay large salaries, and
paid all its earnings in salaries to its officers. The evidence
showed that the stock in question earned dividends amounting
to $63.60, and some of the officers received no salaries; that the
salaries of others were not great, and the condition of the asso-
ciation was not shown at the time the alleged false representa-
tions were made. *Held,* that the evidence was not sufficient to
support the answer charging fraudulent representations.

From Superior Court of Madison County; *H. C. Ryan,*
Judge.

Action by No. 5 Fidelity Building & Savings Union
against James Driver and others. From a judgment in
favor of Samuel T. Bronnenberg, one of the defendants,
plaintiff appeals. *Reversed.*

*D. L. Bishopp, J. R. Thornburgh, R. W. McBride* and
*C. S. Denny,* for appellant.

*C. K. Bagot, Thomas Bagot* and *S. T. Bronnenberg,*
for appellees.

Black, J.—The appellant, a building and loan associ-
ation incorporated in this State, in process of liquidation

under the statute, sued upon a note and to foreclose a real estate mortgage, both executed by the appellees, James and Luella Driver, who had conveyed the real estate to the other appellee Samuel T. Bronnenberg, who, as a part of the consideration, agreed to pay the appellant the amount due on the note and mortgage. Upon trial the court found in favor of the appellant against the appellees Driver and Driver in the sum of $201.40, and found in favor of the appellee Bronnenberg, and that the certificate of stock on which the loan was made by the appellant to the Drivers should remain in force as to them, but should be canceled as to the appellee Bronnenberg; and judgment was rendered accordingly. No question is made here concerning the result reached as to the Drivers, but the judgment in favor of Bronnenberg is attacked.

It is contended on behalf of the appellant that the court erred in overruling its demurrer to the amended fifth paragraph of answer, in which it was alleged that the appellant, by its agents and servants, procured and induced the appellees Drivers to make and execute the note and mortgage sued on, and to subscribe for the stock mentioned in the complaint, by fraud and collusion in this: That the defendants Drivers being then and there entirely ignorant of the business and affairs of the appellant, the appellant and its servants and agents, knowing this fact, at and prior to the execution of the mortgage and bond and the subscription for the stock, falsely and fraudulently represented to the Drivers that the appellant was making earnings and paying great dividends; that they were well and thoroughly acquainted with the conditions of its business and affairs; that it would continue to pay large dividends, so that in less than seventy-two monthly payments on the stock it would mature and satisfy the loan; that the appellees, being entirely ignorant of these facts, believed and relied on said representations, and, so believing and relying, and not otherwise, subscribed for

the stock and borrowed the money and executed the bond and mortgage, as alleged in the complaint; that soon afterward, the Drivers being desirous to sell the mortgaged real estate to the appellee Bronnenberg, and the appellant being desirous to have Bronnenberg purchase it, for the reason that the Drivers were unable to make the payments on the stock, the appellant, by its agents and servants, then and there falsely and fraudulently stated and represented to Bronnenberg that the appellant was in a flourishing condition, that it was paying large dividends, and that its earning capacity was very great, and that it was paying such dividends that the stock in question would be matured within less than seventy-two monthly payments, and the bond and mortgage would be thereby canceled and paid; that Bronnenberg was entirely ignorant of the affairs of the corporation and its earning capacity and as to whether or not it was earning dividends, and believed and relied on said statements and representations, and believed them to be true, and so relying, and not otherwise, he purchased the property and assumed the payment of the bond and mortgage as part of the consideration, and took an assignment of the stock from the Drivers; that in truth and in fact the appellant was not in a flourishing condition, and never had a great earning capacity, and was not making or earning large dividends, or any dividends at all; that the agents and servants who made said representations were a number of persons named; that in truth and in fact the appellant was organized, doing business and operating for the purpose and object of paying its officers large salaries and consuming and exhausting all its earnings in salaries to its officers; that at the time of said representations, and at all times prior thereto, and ever since, the appellant had been and was paying all its earnings in large salaries to its officers—all of which facts were known to the appellant and its said agents and servants at the time said representations were made, and they

were knowingly and falsely and fraudulently made for the purpose of cheating and defrauding the appellees as aforesaid; that the appellees did pay to the appellant at maturity more than seventy-two payments on the stock as aforesaid. Wherefore, etc.

It is suggested that the representations alleged in this answer were not such that a charge of fraud could be based thereon. The representations did not relate alone to future events, and were not merely expressions of opinion concerning existing conditions or values. The then existing condition of the corporation was falsely represented to be flourishing, and its business was stated to be such that, if the statement had been true, a person in the situation of the appellees might not unreasonably rely upon promises or predictions based thereon by those who made the representations. In the note it was stipulated that if the maker should pay all instalments which became due thereon, and all fines and monthly payments which became due on the stock until it became fully paid in and of the value of $100 per share, and before any of the interest or monthly payments should have been past due for three months, then, upon surrender of the stock, the note should be deemed fully paid; and the mortgage provided that the interest, premium, and instalments were to become due on a specified day of each month until the shares should mature and become of the value of $100. Unless the appellees were apprised by these provisions of the note and mortgage of the falsity or unreasonableness of the representations, there does not appear to have been anything of which they were bound to take notice so inconsistent with the representations as to make it unreasonable for the appellees to rely and act upon the representations. We do not perceive any such irreconcilability of the representations with the provisions of the written contract.

In *Hartman* v. *International Bldg., etc., Assn.*, 28 Ind. App. 65, where the answer was held to be sufficient, the

false representation (not inconsistent with the contents of the bond and mortgage, and no by-law to the contrary appearing or being referred to in the pleadings) was that, if the defendant would become a member and contract the loan and pay the dues, interest, and premiums, the bond and mortgage would be paid and canceled by a specified number of payments.   It was held that this representation was not merely a statement of intention or an expression of opinion, but was a representation of a fact. The answer now before us is different in some respects. The language relating to Bronenberg, construed according to its ordinary meaning, is to the effect, not that it was represented that, as an absolute fact, the stock would be matured and the debt would be paid by a certain specified number of payments of instalments, but that the association was then in a flourishing condition and paying large dividends and having very great earning capacity, and by reason of the fact that it was paying such dividends the stock would be matured within less than a specified number of monthly payments, and thereby the bond and mortgage would be canceled and paid.   The things of which it was alleged the appellee Bronenberg was ignorant were the affairs and earning capacity of the corporation, and whether or not it was paying dividends.   The things alleged to be true were that the association was not in a flourishing condition, and it never had great earning capacity, and it was not making or earning large dividends or any dividends, but it was organized and operated to pay large salaries, and always paid all its earnings in large salaries to its officers.

Material facts stated were, it was alleged, falsely and fraudulently represented as then existing, and it was upon their existence that the speedy maturity of the stock was predicted, as an expectation that might reasonably be entertained from such facts represented as then existing, and not as an absolute fact that at all events would take place.

In considering the action of the court in overruling the appellant's motion for a new trial we have been required to look into the evidence. We find it to the effect that some of the officers did not receive salaries, and that the salaries paid, so far as has been shown by the evidence, which, on the subject of salaries, related only to a comparatively recent date, were not great; that at some time or times the stock in question earned dividends amounting to $63.60; but as to the time or times when the dividends were earned or credited there was no evidence. The appellee Bronnenberg testified that he talked with agents of the appellant before he purchased the real estate, and that they said, the way it was paying at the time, there would not be over sixty-four payments, and guaranteed there would never be over seventy-two; also, that he relied on what they said to him in 1892 about its being paid out in seventy-two months. Being asked concerning a certain agent with whom he said he had talked, if the agent said probably it would take seventy-two months, the witness answered: "No, probably sixty-four months, and not to exceed seventy-three months. Q. That was his speculation? A. He said that was guaranteed." He testified that he bought the property and assumed the mortgage relying on these statements made by the agents and literature they showed him. No "literature" on this subject was introduced. The defense was not based on a guaranty, or a positive unqualified assertion that the stock would mature within a definite period; and we have been unable to find in the record any evidence showing the condition of the business of the appellant at the time when the representations relating to its condition were made. It was not proved that it was not then in such a flourishing condition, for the time being, that if its existing condition should continue the stock might mature as predicted. The material facts alleged to have been misrepresented were not shown in evidence as alleged in the answer. The appellee Bronen-

berg should have taken the trouble to go into this material part of his defense.

The judgment in favor of the appellee Bronenberg is reversed, and the cause is remanded for a new trial as to him.